UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VIVIAN L.,

                Plaintiff,

v.

NANCY A. BERRYHILL,

                Defendant.

Case No. C18-5436JLR

ORDER REVERSING AND REMANDING DEFENDANT'S DENIAL OF BENEFITS

## I.    INTRODUCTION

Plaintiff Vivian L. seeks review of the denial of her applications for disability insurance ("DI") and supplemental security income ("SSI") benefits. (*See* Pl. Op. Br. (Dkt. # 9) at 1.) Plaintiff contends that the Administrative Law Judge ("ALJ") erred by (1) improperly rejecting the opinions of Bryan Zolnikov, Ph.D.; (2) improperly rejecting the lay witness statements from Lauren Mallory; and (3) rejecting all of the medical opinions in the record, thereby failing to base Plaintiff's residual functional capacity ("RFC") on substantial evidence in the record. (*See id.*) As discussed below, the court REVERSES the final decision of Defendant Nancy A. Berryhill, Deputy Commissioner of the Social Security Administration for Operations (the "Commissioner"), and

ORDER - 1

REMANDS the matter for further proceedings under sentence four of 42 U.S.C. § 405(g).

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, 20 C.F.R. §§ 404.1520 & 416.920, the ALJ found:

> **Step one:** Plaintiff has not engaged in substantial gainful activity since January 30, 2015, the amended alleged disability onset date. *See* 20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*
>
> **Step two:** Plaintiff has the following severe impairments: schizoaffective disorder and bipolar disorder. *See* 20 C.F.R. §§ 404.1520(c) & 416.920(c).
>
> **Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 & 416.926.
>
> **Residual Functional Capacity:** Plaintiff can perform a full range of work at all exertional levels, but has non-exertional limitations. She can understand, remember, and apply short, simple instructions. She can perform routine, predictable tasks. She cannot work in a fast-paced production-type environment. She can make simple decisions. She can have exposure to few workplace changes. She can have occasional interaction with the general public.
>
> **Step four:** Plaintiff cannot perform any past relevant work. *See* 20 C.F.R. §§ 404.1565 & 416.965.
>
> **Step five:** Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 & 416.969(a).

(Admin. Record ("AR") (Dkt. # 7) at 15-35.) Based on these findings, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 30, 2015, through the date of the ALJ's decision. (*Id.* at 34.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

ORDER - 2

Commissioner's final decision. (*Id.* at 1.)

### III. ANALYSIS

Plaintiff, as the claimant, bears the burden of proving she is disabled within the meaning of the Act. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Pursuant to 42 U.S.C. § 405(g), the court may set aside a denial of social security benefits only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the court is required to examine the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff's primary argument is that the ALJ's RFC finding was not supported by substantial evidence because the ALJ assigned little or no weight to all of the medical opinions of record. (*See* Pl. Op. Br. at 2-3.) Plaintiff specifically argues that the ALJ erred in rejecting the opinions of Dr. Zolnikov and statements from Ms. Mallory, but also implies that the ALJ erred in rejecting all of the medical opinions. (*See id.*) The court will first address the ALJ's treatment of Dr. Zolnikov's opinions. The court will next address the ALJ's treatment of Ms. Mallory's statements. The court will then address whether the ALJ's RFC was supported by substantial evidence in the record. The court will not separately address the ALJ's treatment of the other medical opinions in the

record, however, because Plaintiff has not identified any specific errors the ALJ committed. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (noting that the court "'ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief'") (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2008)).

**A.     The ALJ Harmfully Erred in Rejecting Dr. Zolnikov's Opinions**

Plaintiff contends that the ALJ harmfully erred in rejecting Dr. Zolnikov's opinions. (Pl. Op. Br. at 3.) The court agrees.

To reject an examining doctor's opinions, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The court may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

Dr. Zolnikov examined Plaintiff on December 22, 2016. (*See* AR at 576-84.) He diagnosed Plaintiff with schizoaffective disorder, bipolar type. (*Id.* at 577.) Dr. Zolnikov opined that Plaintiff was markedly limited in her abilities to "[u]nderstand, remember, and persist in tasks by following detailed instructions"; "[p]erform routine tasks without special supervision"; and "[m]aintain appropriate behavior in a work setting." (*Id.* at

ORDER - 4

577-78.) Dr. Zolnikov further opined that Plaintiff was severely limited in her abilities to "[p]erform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision"; "[c]ommunicate and perform effectively in a work setting"; and "[c]omplete a normal work day and work week without interruptions from psychologically based symptoms." (*Id.*)

The ALJ gave Dr. Zolnikov's opinions little weight. (*Id.* at 32.) The ALJ gave three reasons for rejecting Dr. Zolnikov's opinions: (1) they were inconsistent with or contradicted by the overall medical evidence; (2) they were inconsistent with Dr. Zolnikov's own examination findings; and (3) Plaintiff made statements to Dr. Zolnikov that were inconsistent with her statements elsewhere in the record. (*Id.* at 27-28, 32.)

1. <u>The ALJ Erred in Finding That Dr. Zolnikov's Opinions Were Inconsistent with the Overall Medical Evidence</u>

The ALJ's first reason for rejecting Dr. Zolnikov's opinions does not withstand scrutiny. An ALJ may reasonably reject a doctor's opinions when they are inconsistent with or contradicted by the medical evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). But the ALJ's conclusion must be supported by substantial evidence in the record. *See Bayliss*, 427 F.3d at 1214 n.1.

The ALJ's primary contention here was that Plaintiff's symptoms "improved and stabilized on medications." (*See* AR at 32.) The overall medical record does not support this contention. In November 2015, Plaintiff reported that her medications were helping her symptoms, but she was "still having significant episodes of anxiety." (*Id.* at 547.) In March 2016, Plaintiff reported that her medication was helping, but her treatment

ORDER - 5

providers noted symptoms of mania, and one doctor suggested she undergo inpatient psychiatric treatment. (*Id.* at 560-61.) Plaintiff's therapist, Ms. Mallory, noted on multiple occasions between August 2016 and January 2017 that Plaintiff suffered from delusions, and exhibited abnormal thought processes such as racing thoughts and "flight of ideas." (*See id.* at 620, 623, 631, 641, 644, 654, 656, 659, 664.) The ALJ's contention that Plaintiff's symptoms improved and stabilized was not supported by substantial evidence in the record, and thus he erred in rejecting Dr. Zolnikov's opinions as inconsistent with the overall medical evidence.

2. <u>The ALJ Erred in Finding That Dr. Zolnikov's Opinions Were Inconsistent with His Own Examination Findings</u>

The ALJ's second reason for rejecting Dr. Zolnikov's opinions is similarly flawed. An ALJ may discount a doctor's opinions when they are inconsistent with or unsupported by the doctor's own clinical findings. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But again, the ALJ's determination must be supported by substantial evidence in the record. *See Bayliss*, 427 F.3d at 1214 n.1.

The ALJ's primary reasoning here was that Plaintiff's "presentation and performance during the mental status examination did not reveal significant deficits in overall and cognitive functioning." (AR at 32.) That is an incomplete description of Dr. Zolnikov's report, which reflected both normal and abnormal findings. (*See id.* at 578-79.) Dr. Zolnikov noted that Plaintiff was cooperative with the exam but "tended to ramble and exhibit tangentiality and loose associations." (*Id.*) Plaintiff denied any current episodes of mania, but "presented with a depressed mood." (*Id.* at 579.) Plaintiff

ORDER - 6

showed good insight into her mood issues, but poor insight in "identifying issues with [her] thought disorder." (*Id.*)  These findings do not contradict Dr. Zolnikov's opinions, nor has the ALJ specifically explained how they are inconsistent with Dr. Zolnikov's opinions.  The ALJ's determination that Dr. Zolnikov's exam findings were inconsistent with his opinions was therefore not a specific and legitimate reason to reject Dr. Zolnikov's opinions.

> 3. The ALJ Erred in Rejecting Dr. Zolnikov's Opinions Because Plaintiff Made Inconsistent Statements to Dr. Zolnikov

The ALJ's third reason for rejecting Dr. Zolnikov's opinions fails because it is vague and inadequately explained.  The fact that Plaintiff made inconsistent statements may detract from her credibility, but the ALJ needed to do more than simply acknowledge those inconsistencies to reject Dr. Zolnikov's opinions.  *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008).  The ALJ needed to explain the relevance of those inconsistencies and demonstrate that Plaintiff's subjective reports somehow distorted the doctor's findings.  *See id.*

None of the inconsistencies the ALJ noted here are particularly revealing, nor do they contradict Dr. Zolnikov's opinions.  For example, Plaintiff told Dr. Zolnikov she stopped working in 2013 because her mental health deteriorated, but elsewhere reported that she stopped working to care for her ill son.  (AR at 27-28, 289, 367, 576.)  Dr. Zolnikov examined Plaintiff three years after she stopped working, and nothing in his report indicates that he relied on Plaintiff's reported reason for stopping work more than he did his own objective findings.  (*See id.* at 576-84.)  The ALJ therefore failed to

adequately explain why Plaintiff's inconsistent statements justified discounting Dr. Zolnikov's opinions.

The ALJ also noted that Plaintiff was not entirely forthcoming regarding her past and present drug use. (*Id.* at 28.) In some situations, a claimant's undisclosed drug use may be an adequate reason to discount a doctor's opinions, such as where it compromises the doctor's ability to accurately diagnose the claimant. *See, e.g.*, *Andrews*, 53 F.3d at 1042 (upholding ALJ's rejection of examining psychologist's opinions where his "ability to diagnose [the claimant] accurately was compromised by [the claimant's] substance abuse"). But here the ALJ did nothing more than to note Plaintiff's inconsistent statements regarding her drug use. (*See* AR at 28, 32.) The ALJ did not explain how or why this compromised Dr. Zolnikov's opinions, especially considering the fact that Dr. Zolnikov was able to examine Plaintiff and make objective clinical findings. (*See id.* at 28, 32, 576-84.) The ALJ thus erred in rejecting Dr. Zolnikov's opinions based on Plaintiff's inconsistent statements.

4. <u>The ALJ's Errors in Rejecting Dr. Zolnikov's Opinions Were Harmful</u>

The ALJ's errors in evaluating Dr. Zolnikov's opinions must be deemed harmful. The court may only consider an error harmless when it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Because the ALJ discounted Dr. Zolnikov's opinions, he did not fully account for the limitations Dr. Zolnikov imposed on Plaintiff in the RFC. For example, Dr. Zolnikov opined that Plaintiff was severely limited in her ability to communicate and

ORDER - 8

perform effectively in a normal work setting, yet the RFC does not include any communication limitations beyond "occasional interaction with the general public." (*See* AR at 20-21, 578.) But an RFC must address all of a claimant's limitations established by the evidence or it is defective. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ accordingly committed harmful error in rejecting Dr. Zolnikov's opinions.

**B.      The ALJ Harmfully Erred in Rejecting Ms. Mallory's Lay Statements**

Plaintiff next contends that the ALJ harmfully erred in rejecting Ms. Mallory's lay witness statements. (Pl. Op. Br. at 3.) The court agrees.

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout*, 454 F.3d at 1053). Lay witness testimony includes medical statements from individuals such as mental health therapists, who are not considered acceptable medical sources. *See* 20 C.F.R. § 404.1502(a); *Fernandez v. Barnhart*, 68 F. App'x 820, 821 (9th Cir. 2003). The ALJ must "give reasons germane to each witness" before he can reject statements from these other medical sources. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

Ms. Mallory was Plaintiff's therapist. (*See* AR at 600-87.) She submitted a medical source statement on October 28, 2016. (*See id.* at 689-91.) Ms. Mallory opined

ORDER - 9

that Plaintiff was markedly limited in her abilities to maintain attention and concentration for extended periods of time; and complete a normal work day and week without interruptions from her psychologically-based symptoms. (*Id.* at 690.) Ms. Mallory explained that Plaintiff "displays struggles with task orientation and remaining focused during [therapy] sessions," and that she "has to be redirected multiple times throughout [these] sessions." (*Id.* at 691.)

The ALJ gave Ms. Mallory's statements little weight. (*Id.* at 32.) He reasoned that (1) her statements were inconsistent with the overall medical evidence; (2) Ms. Mallory's treatment visits often focused on Plaintiff's "ongoing psychological stressors and fixation on receiving disability benefits . . . instead of actually discussing mental health issues"; and (3) Ms. Mallory's statements were contradicted by Plaintiff's daily activities. (*Id.*)

1. <u>The ALJ Erred in Rejecting Ms. Mallory's Statements for Being Inconsistent with the Overall Medical Evidence</u>

The ALJ's reasoning here was the same as it was for Dr. Zolnikov. (*See* AR at 31-32.) The ALJ again claimed that Plaintiff improved and stabilized on medication, a fact that is not supported by the record. *See supra* § III.A.1. The ALJ accordingly erred in rejecting Ms. Mallory's statements for being inconsistent with the overall medical evidence.

2. <u>The ALJ Erred in Rejecting Ms. Mallory's Testimony on the Basis That Her Treatment Visits Focused on Issues Other Than Plaintiff's Mental Health</u>

The ALJ's second reason for rejecting Ms. Mallory's statements fails because it

does not accurately reflect the record. An ALJ may not reject lay testimony based on an inaccurate portrayal of the record evidence. *See Reddick*, 157 F.3d at 722-23 (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record"). First, Ms. Mallory's treatment notes indicate that the issues she and Plaintiff often discussed related to Plaintiff's mental health. (*See, e.g.*, AR at 606, 618, 621, 627, 632, 637.) Second, the fact that a therapist would discuss her patient's "ongoing psychological stressors" in no way detracts from the reliability of the therapist's testimony. To the contrary, a discussion of ongoing psychological stressors is a perfectly reasonable topic of discussion during mental health therapy. Third, although Plaintiff discussed her efforts to obtain social security benefits at some of her appointments with Ms. Mallory, there is nothing to suggest that Ms. Mallory's statements were improperly influenced by these discussions. This was thus not a reasonable basis on which to discount Ms. Mallory's statements. *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1464-65 (9th Cir. 1996) (holding that an ALJ may not reject the opinion of a doctor when the opinion was procured at the request of an attorney if there is no evidence of impropriety, and the opinion has an objective medical basis).

    3.    <u>The ALJ Erred in Rejecting Ms. Mallory's Statements as Inconsistent with Plaintiff's Daily Activities</u>

The ALJ's third reason for rejecting Ms. Mallory's statements fails because it once again does not accurately reflect the evidence in the record. The ALJ determined that Plaintiff's "ability to maintain her home and take care of her family members [as reported] during the hearing indicate[d] a higher level of functioning than reflected in Ms.

ORDER - 11

Mallory's opinion." (AR at 32.) Although inconsistency with a claimant's daily activities is a germane reason for discounting lay witness testimony, *Bramble v. Berryhill*, 692 F. App'x 862, 864 (9th Cir. 2017), the ALJ's findings must be supported by substantial evidence in the record, *see Bayliss*, 427 F.3d at 1214 n.1.

The ALJ's determination here is not supported by substantial evidence. Far from showing an ability to maintain a home, Plaintiff testified that she and her boyfriend slept in a tent on her mother's property. (*See* AR at 66-67.) Similarly, Plaintiff's testimony does not show that she took care of her family members to any significant extent. Plaintiff testified that her mother spent a substantial amount of time caring for Plaintiff and her children. (*Id.* at 82.) Plaintiff testified that one of her sons was homeless. (*Id.* at 85.) Plaintiff testified that although two of her sons lived with her, both were adults and left her alone because she had difficulty communicating with them. (*See id.* at 83, 97-98.) The ALJ's decision to reject Ms. Mallory's statements as inconsistent with Plaintiff's daily activities was thus not supported by substantial evidence.

4. <u>The ALJ's Errors in Rejecting Ms. Mallory's Statements Were Harmful</u>

The court once again concludes that the ALJ committed harmful error. He gave no valid reasons for rejecting Ms. Mallory's statements, which suggested additional work limitations beyond those in the RFC. (*See id.* at 20-21, 690-91.) Accordingly, the court cannot confidently conclude that the ALJ would have reached the same disability determination had he properly considered Ms. Mallory's statements. *See Stout*, 454 F.3d at 1055-56. The ALJ therefore committed harmful error when he failed to properly

evaluate Ms. Mallory's statements.

**C.     The ALJ Erred in Assessing Plaintiff's RFC**

Plaintiff argues that the ALJ harmfully erred because he rejected all of the medical opinions in the record, and therefore must have based Plaintiff's RFC on less than substantial evidence. (Pl. Op. Br. at 2-3.) Plaintiff is incorrect, as the RFC is more than just a medical determination. The ALJ must consider the medical evidence, such as treatment records and doctors' opinions, but must also take into account the claimant's testimony, lay witness statements, and other non-medical considerations, such as the claimant's daily activities. *See* 20 C.F.R. § 404.1545(a)(3); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record, such as: [m]edical history, [m]edical signs and laboratory findings, . . . [r]eports of daily activities, [l]ay evidence, [r]ecorded observations, [and] [m]edical source statements"). Thus, while it is true that the ALJ may not substitute his own medical opinions for those of trained professionals, he may (and, in fact, must) translate all of the evidence, medical and non-medical, into a succinct RFC.

Plaintiff is correct, however, that the ALJ erred by basing his RFC determination on less than substantial evidence. As discussed above, the ALJ harmfully erred in rejecting Dr. Zolnikov's opinions and Ms. Mallory's statements. *See supra* §§ III.A-.B. His RFC determination was therefore not supported by substantial evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (holding that the ALJ's RFC

ORDER - 13

determination was not supported by substantial evidence where he failed to give valid reasons for discounting certain evidence).

**D.    Scope of Remand**

The appropriate remedy for the ALJ's harmful errors in this case is to remand the matter for further administrative proceedings because there are conflicts or ambiguities in the record, and Plaintiff's entitlement to benefits is unclear. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014). For example, the ALJ did not incorporate Dr. Zolnikov's opinions on Plaintiff's limitations into the RFC or hypotheticals to the vocational expert, so the court is unable to determine whether any jobs exist in significant numbers in the national economy that Plaintiff could perform. (*See* AR at 20-21, 32.) The same is true of Ms. Mallory's statements. (*See id.* at 20-21, 31-32.) Remand for further proceedings is necessary to resolve these and other ambiguities. *See Leon v. Berryhill*, 880 F.3d 1041, 1047-48 (9th Cir. 2017) (affirming the district court's remand for further proceedings rather than remand for an award of benefits where there were unresolved conflicts and ambiguities in the evidence).

On remand, the ALJ shall reevaluate Dr. Zolnikov's opinions; reevaluate Ms. Mallory's statements; reassess the medical evidence as necessary; reassess Plaintiff's RFC; and conduct further proceedings as necessary to reevaluate the disability determination in light of this opinion.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and

the matter is REMANDED for further proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 29th day of November, 2018.

JAMES L. ROBART
United States District Judge

ORDER - 15